UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.O.L. (XXX-XX-0764)            CIVIL ACTION NO. 09-cv-0253

VERSUS

U.S. COMMISSIONER SOCIAL         MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## MEMORANDUM RULING

**Introduction**

     ROL ("Plaintiff") was born in 1961, completed high school in special education classes, and worked for several years in jobs such as roustabout and boat deck hardware installer. He applied for disability benefits based on mental and physical limitations. ALJ Charles Lindsay denied the application.

     The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Standard of Review; Substantial Evidence**

     This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is

more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Listing 12.05(C)**

The ALJ analyzed the claim under the five-step sequential analysis. He found at step one that Plaintiff was not engaged in substantial gainful activity and at step two that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine, shaking of hands, mild mental retardation, and major depressive disorder.

Step three asks whether the claimant has an impairment or combination of impairments that meets or medically equals a listed impairment. The listings found in the regulations describe levels of impairment related to each of the major body systems. The Commissioner has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." Sullivan v. Zebley, 110 S.Ct. 885, 891 (1990); 20 C.F.R. § 404.1525 and § 416.925. Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis.

Listings criteria are "demanding and stringent." <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir.1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." § 404.1525(d); § 416.925(d). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a step three listing determination. <u>Sullivan</u>,110 S.Ct. at 891("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria").

If an impairment does not *meet* a listing, it may also entitle the claimant to a finding that he is disabled if his impairment or combination of impairments is *medically equivalent* in severity to the listing. § 404.1526 and § 416.926. If the claimant argues for medical equivalency, the standard is similarly demanding. And the claimant may not establish listings level severity through subjective testimony. <u>Sullivan</u>, 110 S.Ct. at 891-92. Rather, the claimant must point to medical findings that support each of the criteria for the equivalent impairment determination. <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir.1990).

The ALJ found that Plaintiff's "mental impairments do not meet or medically equal the requirements of listings 12.04 or 12.05." Tr. 22. He then proceeded to discuss the various paragraphs and subparagraphs of those listings as they relate to this case. Relevant here is listing 12.05(C) for mental retardation. It provides as follows:

> Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; i.e., the

> evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

The claimant must demonstrate (1) a qualifying IQ score, (2) deficits in adaptive functioning manifested before age 22, and (3) a physical or other mental impairment that satisfies the listing. Randall v. Astrue, 570 F.3d 651 (5th Cir. 2009). The ALJ found that Plaintiff had an IQ of 64, but the listing was not met because there was no indication of deficits in adaptive functioning prior to age 22. The ALJ noted that Plaintiff had worked for 15 or more years at skilled or semi-skilled jobs. Tr. 23.

Plaintiff does not challenge the ALJ's decision that he did not meet the criteria of the listing. Rather, Plaintiff argues that the ALJ erred when he did not include a finding that the listing was not equaled. The ALJ did not use the word "equaled" in the specific paragraph where he discussed the paragraph (C) criteria (Tr. 23), but he did make a finding that Plaintiff did not "meet or medically equal" any of the provisions of listing 12.05. Tr. 22. There was no detailed discussion of the "equaled" issue, and there seldom is unless there is a readily apparent basis for such an argument or the party presses the issue before the ALJ. Neither

situation is present in this case, so the lack of further discussion of the equality issue does not give rise to reversible error or concern.

Plaintiff argues that he equals the listing because he has deficits in adaptive functioning that were manifested later in life, which prevents meeting the listing, but results in the same level of inability to work. Relevant to this is a consultative examination conducted by Samuel Thomas, Ed.D., a licensed psychologist, and his clinical associate. Plaintiff reported that he lived alone but makes friends, has a best friend, and initiates conversations with others in social situations. He said that he left his job at the boat company because he had difficulty remembering his job duties. Plaintiff reported a depressed mood. He showed no formal signs of thought disorder during the examination, and his recent and remote memory appeared to be intact. Concentration on simple tasks ranged from borderline to adequate, and Plaintiff persisted and gave good effort throughout the examination. With regard to adaptive functioning, the examiners noted that Plaintiff dresses himself, wears appropriate clothing without reminders, cares for his personal hygiene, uses the stove and microwave, sweeps and mops, takes out the trash, does laundry, mows the grass, cooks simple meals, uses table manners without being told, and the like. However, Plaintiff had difficulty reading books above a second grade level, did not order meals in restaurants, and does not tell time in five-minute segments. His communication skills were said to be deficient, and his daily living and socialization skills were said to be somewhat deficient. Dr. Thomas concluded that Plaintiff "should be able to perform at least low-level unskilled

job tasks in a normal, competitive work environment," but he might be limited due to physical problems reported during the examination. Tr. 236-40.

Dr. Thomas also completed an assessment form in which he found no limitation in the abilities to understand, remember, and carry out simple instructions; mild limitation in the ability to make judgments on simple work-related decisions; and moderate limitation with regard to more complex instructions and issues. He did not consider Plaintiff to have a marked or extreme limitation in any category. He found that Plaintiff had only a mild limitation in the ability to interact with the public or respond to usual work situations, but there was no limitation found in the ability to interact appropriately with coworkers and supervisors. Tr. 241-43.

The evidence showed that Plaintiff has some limitations because of his mental status, but they were not considered serious enough to prevent him from engaging in work. The listings are designed to describe those limitations that are so severe that any person is deemed disabled without regard to his age, work history, or other factors. The evidence suggests that Plaintiff retains the ability to engage in work activities despite his mental limitations. The undersigned finds that the ALJ had substantial evidence to support his decision that Plaintiff did not meet or equal the listing. Plaintiff complains that there was not medical evidence specifically declaring that he did not equal the listing, but the burden is on the claimant at step three, and the ALJ is under no obligation to gather such evidence absent a set of facts

or argument from the claimant that more squarely presents the issue. Otherwise, the agency would have to pay for medical equivalency reports in almost every case.

**Sit-Stand Option**

The medical evidence reviewed by the ALJ with regard to Plaintiff's back problems included a consultative examination by Dr. Raymond Cush. He observed that Plaintiff moved about with no assistive device or apparent difficulty, and his gait was normal. A back exam revealed tenderness over the lumbosacral region. Plaintiff could arise from a squatting position, get on and off the exam table without assistance or apparent pain, and he had grip strength of 5/5 in both hands. He did have a positive straight-leg raise. Tr. 113-16.

A state agency examiner reviewed the record and found that Plaintiff could sit for about six hours in a workday, stand and/or walk for up to four hours in a workday, perform the lifting demands of light work, and had no postural limitations. The examiner found that Plaintiff's complaints of physical limitations were partially credible and that his back problems would be expected to cause only "some functional limitations." Tr. 120-27.

The ALJ reviewed the evidence and found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to some additional physical and mental limitations. Tr. 23. A VE testified that this RFC did not allow Plaintiff to perform his past relevant work (step four), but the VE identified at step five jobs such as cleaner/housekeeping and patch worker that Plaintiff could perform and that exist in significant numbers in the relevant economies.

The ALJ issued his decision in July 2007. Plaintiff obtained a report nine months later, in April 2008, from Steve Allison, a physical therapist, who performed a functional capacity evaluation. Allison determined that Plaintiff had the RFC to perform what he described as restricted-light to restricted-medium physical demand work. Allison's report states: "This means that he is physically capable of safely performing full-time work activity classified in the LIGHT to MEDIUM physical demand level range as defined by the Dictionary of Occupational Titles ... with the recommended restrictions." Attached to the report is a table with a summary of safe functional abilities. With regard to standing and walking, the table states that Plaintiff can engage in such activities frequently and: "On average, he will need to sit for 20 minutes each hour." The table states that Plaintiff may also sit frequently but will need to "stand and walk for 20 minutes each hour." Tr. 246-65.

Plaintiff later submitted Allison's report to the Appeals Council, where an appeal of the ALJ's decision was pending. Plaintiff pointed to the 20-minute sit and stand/walk findings, and he pointed out that the VE testified that a sit-stand option would eliminate the light jobs she had identified. The VE has also testified that sedentary jobs would be reduced by 50 percent (but the ALJ did not identify any sedentary jobs as a basis for his decision). Tr. 266-67. See also VE testimony at Tr. 313 and ALJ step-five finding at Tr. 28.

The Allison report was not presented to the ALJ but was presented to the Appeals Council. That body wrote that it had considered the additional evidence and found it did not provide a basis for changing the ALJ's decision. Tr. 4-5. The Commissioner's final decision,

the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

The Allison report's rather extreme requirement of 20-minute hourly interruptions is not consistent with the other medical evidence, and it is not easily reconciled with Allison's basic finding that Plaintiff could perform light to medium work. There were also no particular findings in the Allison report that would suggest such an extraordinary limitation. The court has noted before that it has now reviewed a number of such reports and observed that Allison often lists in the summary chart a finding that a claimant will need a break from sitting to stand/walk for 20 minutes each hour. Such breaks, which take a person away from his work station, usually preclude most or all jobs. Such a devastating limitation requires a firm and explained foundation in the medical and other evidence, and that foundation is not present in this case. Bell v. Commissioner, 2009 WL 5125418 (W.D. La. 2009). Accordingly, the Appeals Council was justified in its view of the report, and the agency's decision is supported by substantial evidence. A judgment will be entered affirming the Commissioner's decision to deny benefits.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of March, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE